283 N.J. Super. 84 (1995)
660 A.2d 1301
REUVEN TYBERG, PLAINTIFF,
v.
GEORGE KOKINIDIS, ENVIROPLAN, INC., AND LIBERTY MUTUAL INSURANCE CO., LUMBERMANS MUTUAL CASUALTY CO., AND NATIONAL UNION FIRE INSURANCE CO., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 21, 1995.
*86 Hugh M. Turk, for plaintiff Tyberg (Sullivan & Liapakis, attorneys).
Kevin R. Brotz, for defendants Kokinidis and Enviroplan, Inc. (Purcell, Ries, Shannon, Mulcahy & O'Neill, attorneys).
Marianne Wuillamey, for defendant Liberty Mutual Insurance Co. (Addas & Potenza, attorneys).
James P. Richardson, for defendant Lumbermans Mutual Casualty Co. (Sellar, Richardson, Stuart & Chisholm, attorneys).
Brian C. Harris, for defendant National Union Fire Insurance Co. (Braff, Harris & Sukoneck, attorneys).
*87 FITZPATRICK, J.S.C.
This matter comes before the court by way of cross motions for summary judgment filed by plaintiff Reuven Tyberg, defendants George Kokinidis and Enviroplan, Inc. and the parties' respective insurance carriers. The court has been called upon to decide whether plaintiff's insurance carrier, Liberty Mutual Insurance Company, is obligated to pay plaintiff $50,000 in supplemental Personal Injury Protection (PIP) benefits pursuant to an insurance policy that it issued to plaintiff. In addition, the court must decide whether Liberty Mutual is entitled to a lien against the proceeds of any settlement in favor of plaintiff or a right of reimbursement against defendants Kokinidis and Enviroplan or their insurance carriers for PIP payments already made to plaintiff. Before addressing the arguments raised by the parties, the court must first determine whether it should apply New Jersey or New York law to the facts at hand.
The facts essential to resolution of the questions presented in this case are not in dispute. On August 14, 1991, plaintiff, Reuven Tyberg, was seriously injured in a two-car automobile collision between cars driven by plaintiff and defendant George Kokinidis. This collision occurred in close proximity to the intersection of Route 9W and Exit 3 of the Palisades Interstate Parkway in Alpine, New Jersey. Plaintiff was driving a 1986 Chevrolet Celebrity station wagon owned by his father and registered in New York. Defendant was driving a car owned by his employer, Enviroplan, and registered in New York.
At the time of the collision, plaintiff lived in Spring Valley, New York; defendant George Kokinidis lived in North Bergen, New Jersey; and defendant Enviroplan, Inc. had its principal place of business in Roseland, New Jersey. Plaintiff's vehicle was insured under Policy Number A02-221-593634-001 issued by Liberty Mutual Insurance Company (Liberty Mutual) which provided PIP coverage under New York law. Defendants Kokinidis and Enviroplan had primary coverage through a policy issued by Lumbermans Mutual Casualty Company (Lumbermans) which provided *88 PIP coverage under New York and New Jersey law and excess coverage through a policy issued by National Union Insurance Company (National Union) which provided PIP coverage under New York law.
To date, plaintiff has incurred medical expenses in excess of $250,000. Liberty Mutual has paid $250,000 in PIP benefits to plaintiff pursuant to provisions of Policy Number A02-221-593634-001 and New York and New Jersey law. Plaintiff demands that Liberty Mutual pay an additional $50,000 in PIP benefits pursuant to an additional premium that was purchased for his benefit. Liberty Mutual refuses to pay for medical expenses in excess of $250,000. As a result, plaintiff has filed the within action against Liberty Mutual seeking a declaration by this court that Liberty Mutual's current exposure under the insurance policy it issued to plaintiff is $50,000.
In addition to the present action pending against Liberty Mutual, plaintiff instituted a personal injury action against Kokinidis and Enviroplan to recover damages for the personal injuries and loss of earnings he sustained as a result of their alleged negligence. Liberty Mutual contends that it is entitled to a lien against the proceeds of any settlement in the personal injury action under New York law. In addition, Liberty Mutual contends that it is entitled to a right of reimbursement for PIP payments it already made to plaintiff from Lumbermans and National Union, the insurers of the alleged tortfeasor (Kokinidis) and Enviroplan. Plaintiff and defendants Kokinidis and Enviroplan argue that New York and New Jersey law do not permit Liberty Mutual to assert a lien against the settlement proceeds that plaintiff may recover in the underlying personal injury action. Plaintiff, defendants Kokinidis and Enviroplan, and their carriers, National Union and Lumbermans, argue that Liberty Mutual is not entitled to reimbursement of the PIP benefits paid to plaintiff from any party to this litigation. The court has allowed plaintiff to amend his complaint to allege a declaratory judgment claim and join, as parties, the various insurance carriers so that the legality *89 of the positions taken by Liberty Mutual could be resolved in a way which would be binding on all parties.
The initial question before the court is whether New York or New Jersey law applies to the issue of reimbursement among the insurers in the instant suit for PIP payments. The leading case in New Jersey dealing with choice-of-law principles in the area of liability insurance contract controversies arising from automobile accidents is State Farm Mut. Auto. Ins. Co. v. Estate of Simmons, 84 N.J. 28, 417 A.2d 488 (1980). In State Farm, the Supreme Court fully explained the choice-of-law analysis that a New Jersey Court must undertake in order to decide which law applies in the context of a declaratory judgment action filed by an insurer that denied coverage based on another state's law where the policy in question was issued in that state but the accident giving rise to the parties' claims occurred in New Jersey. Id. at 41, 417 A.2d 488. The Supreme Court stated the following rule of law:
[T]he law of the place of the contract ordinarily governs the choice of law because this rule will generally comport with the reasonable expectations of the parties concerning the principal situs of the insured risk during the term of the policy and will furnish needed certainty and consistency in the selection of the applicable law.... At the same time, this choice-of-law rule should not be given controlling or dispositive effect. It should not be applied without a full comparison of the significant relationship of each state with the parties and the transaction. That assessment should encompass an evaluation of important state contacts as well as a consideration of the state policies affected by, and governmental interest in, the outcome of the controversy.
[Id. at 37, 417 A.2d 488.]
If the same result with respect to coverage would be obtained in a case regardless of which state's law is applied, there would be no conflict of law between the two states, obviating the need to choose between them. Id. at 41, 417 A.2d 488 (citing Kievit v. Loyal Prot. Life Ins. Co., 34 N.J. 475, 493, 170 A.2d 22 (1961); Pfau v. Trent Alum. Co., 55 N.J. 511, 527, 263 A.2d 129 (1970)).
Applying this approach to facts of the case at bar, the court recognizes that New York law should apply, unless an evaluation of significant state relationships, including significant state policies and governmental interests, reveals that the State of New Jersey *90 has a significant and dominant relationship to the parties and the underlying issues. After making such an evaluation, the court concludes that it need not choose between application of the laws of New York and New Jersey since, under either scenario, Liberty Mutual does not have a right of reimbursement from defendants Kokinidis and Enviroplan or their insurance carriers, National Union and Lumbermans, or a lien against settlement proceeds from the underlying personal injury action. Similarly, with respect to plaintiff's claim that he is entitled to $50,000 in supplemental PIP benefits, the need for choosing between application of New York and New Jersey law is obviated by reason of the fact that the laws of these states are not in conflict with one another. Under either state's laws, the court finds that the plain meaning of the insurance contract issued by Liberty Mutual to plaintiff compels the conclusion that plaintiff should receive supplemental PIP benefits in exchange for an additional premium that he paid to Liberty Mutual for such benefits.
First, the court will assess the important state contacts which define the relationship of each state to the subject matter in controversy. As noted earlier, plaintiff, a New York resident, was seriously injured in an automobile collision with an automobile driven by George Kokinidis, a New Jersey resident, and owned by Enviroplan, a corporation with its principal place of business in Roseland, New Jersey. The accident occurred in close proximity to the New York-New Jersey border in Alpine, New Jersey.
At the time of the collision, plaintiff lived in Spring Valley, New York and was driving a car registered in New York. Defendant George Kokinidis was residing in North Bergen, New Jersey and driving a vehicle registered in New York. Plaintiff's vehicle was insured by Liberty Mutual, which provided PIP coverage under New York law. Defendants Kokinidis and Enviroplan had primary coverage through a policy issued by Lumbermans, which provided PIP coverage under New York and New Jersey law, and excess coverage through a policy issued by National Union, which provided PIP coverage under New York law.
*91 In addition to these significant contacts, relevant state policy and state governmental interests are other important considerations to be weighed in determining the appropriate choice of law. "There are many expressions of state policy." Estate of Simmons, supra, 84 N.J. at 39, 417 A.2d 488 (citing Vasquez v. Glassboro Serv. Ass'n, 83 N.J. 86, 98, 415 A.2d 1156 (1980)). Legislation and decisional law interpreting such legislation are reflections of state policy that should be considered. Id. at 40, 41, 417 A.2d 488.
N.J.S.A. 39:6A-9.1 is the exclusive provision in New Jersey motor vehicle and insurance law which provides a method for PIP carriers to recoup PIP benefits which they have paid to their insureds. There is no provision for a lien against settlement proceeds in N.J.S.A. 39:6A-9.1. Consequently, the court is only required to analyze whether N.J.S.A. 39:6A-9.1 provides a right of reimbursement to Liberty Mutual from defendants Kokinidis and Enviroplan or their primary and excess insurance carriers for PIP benefits paid to plaintiff.
N.J.S.A. 39:6A-9.1 provides, in pertinent part, as follows:
39:6A-9.1. Insurer recovery. An insurer ... [paying personal injury protection benefits] ... as a result of an accident occurring within this State shall, within two years of the filing of the [PIP] claim, have the right to recover the amount of payments from any tortfeasor who [1] was not, at the time of the accident, required to maintain personal injury protection or medical expense benefits coverage, ... including personal injury protection coverage required to be provided in accordance with section 18 of P.L. 1985, c. 520 (C. 17:28-1.4), or [2] although required did not maintain personal injury protection or medical expense benefits coverage at the time of the accident. In the case of an accident in this state involving an insured tortfeasor, the determination as to whether an insurer ... is legally entitled to recover the amount of payments and the amount of recovery, including the costs of processing benefit claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration.
Consistent with the plain language of N.J.S.A. 39:6A-9.1, Liberty Mutual had two years from the filing of plaintiffs claim for PIP benefits to seek reimbursement, yet failed to do so. Consequently, any potential right to reimbursement that Liberty Mutual may have had no longer exists. Clearly, the Legislature created this *92 statutory right of recovery for an expressly limited period of time and, as a result, a demand for arbitration must be timely made in order to satisfy the requirements of N.J.S.A. 39:6A-9.1 This plain language interpretation of the two-year time limitation of N.J.S.A. 39:6A-9.1 has been repeatedly affirmed by the courts of New Jersey. Insurance Under. v. Liberty Mut. Ins. Co., 270 N.J. Super. 49, 636 A.2d 550 (App.Div. 1994); Allstate Ins. Co. v. Coven, 264 N.J. Super. 240, 245-46, 624 A.2d 594 (App.Div. 1993). Thus, the statute of limitations bars Liberty Mutual's claim for reimbursement from defendants Kokinidis and Enviroplan and their insurance carriers, National Union and Lumbermans.
Furthermore, even in the absence of the two-year statute of limitations, Liberty Mutual would have had no direct right of "subrogation" or reimbursement from defendants Kokinidis and Enviroplan for PIP payments made pursuant to N.J.S.A. 39:6A-9.1, since such provision only allows for reimbursement from a tortfeasor's insurance carrier. Liberty Mut. Ins. v. Selective Ins., 271 N.J. Super. 454, 458, 638 A.2d 1330 (App.Div. 1994); Allstate Ins. Co. v. Coven, supra, 264 N.J. Super. at 240, 624 A.2d 594; Sherman v. Garcia Const., Inc., 251 N.J. Super. 352, 354, 598 A.2d 242 (App.Div. 1991).
In Sherman, the Appellate Division held that where a commercial tortfeasor is covered by liability insurance, a claim for reimbursement of PIP benefits can only be asserted against the liability insurer of such commercial tortfeasor. In Selective, supra, the court explained that the principal purpose of the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984 was to reduce the cost of private passenger insurance by creating a right of reimbursement against tortfeasors' insurers who are not required to have PIP coverage and those who do not have same despite a requirement to do so. Since defendants Kokinidis and Enviroplan are covered by liability insurance, they clearly fall outside the scope of persons from whom Liberty Mutual may seek reimbursement. The immunity of persons similarly situated to defendants Kokinidis and Enviroplan *93 from liability to insurers paying PIP benefits was the result of the Legislature's attempt to strike an appropriate balance in solving New Jersey's insurance crisis, and it is the court's opinion that it would be inappropriate to disturb such decision under New Jersey law.
Similarly, the public policy of New York, as expressed by New York Insurance Laws § 5104(b) and § 5105 and decisional law interpreting such provisions, indicates a clear decision on the part of the New York Legislature and courts to preclude insurance carriers similarly situated to Liberty Mutual from obtaining reimbursement of PIP benefits or a lien against proceeds of a settlement in cases involving factual scenarios similar to the facts in the case at bar.
New York Insurance Law § 5104(b) provides that an insurer who has paid or is liable for first party benefits may assert a lien against any proceed or any recovery by the recipient of such benefits in certain circumstances. However, such lien is only enforceable where the recipient is a covered person and the tortfeasor is a non-covered person. Ibid. Section 5102(j) of the New York Insurance Law defines the term "covered person" as any owner, operator or occupant of a motor vehicle which has in effect the financial security required by Article Six or Eight of the Vehicle and Traffic Law or which is referred to in subdivision twenty-one of such law; or any other person entitled to first party benefits.
In the present case, the policies issued by defendants Liberty Mutual, National Union and Lumbermans to plaintiff and defendants Kokinidis and Enviroplan all provide amounts and types of coverage sufficient to satisfy New York insurance requirements. Consequently, there is no basis for Liberty Mutual's claim that it is entitled to a lien under New York law. McKinney's Insurance Law § 5104(b). Similarly, Liberty Mutual's argument that it is entitled to a lien against any settlement or judgment in favor of plaintiff pursuant to endorsement PP-05-87-11-91 is without merit, since the plain language of this endorsement does not and can *94 not provide Liberty Mutual with greater rights to a lien against settlement proceeds than are provided for in § 5104(b).
Furthermore, Liberty Mutual is not entitled to reimbursement of benefits provided to plaintiff from defendants Kokinidis and Enviroplan or any other party to this litigation under New York law. Section 5105 of the New York Insurance Laws clearly provides that any right to recover first party benefits is conditioned upon at least one of the motor vehicles involved being a motor vehicle weighing more than six thousand five hundred pounds unloaded or a motor vehicle used principally for the transportation of persons or property for hire. It appears from the record that the vehicles involved in this collision do not fall into either of these categories. Accordingly, Liberty Mutual is not entitled to reimbursement from any party for PIP payments paid to plaintiff under § 5105 of the New York Insurance Law.
Next, the court must determine whether plaintiff is entitled to $50,000 in supplemental PIP benefits pursuant to the policy issued by Liberty Mutual. Before analyzing the respective positions taken by the parties, a brief review of the facts surrounding plaintiff's claim is necessary.
It is undisputed that although plaintiff's New York policy came with $50,000 in basic no fault benefits, plaintiff is entitled to $250,000 in benefits pursuant to the "Deemer" statute, N.J.S.A. 17:28-1.4, and an analogous provision of New York Law, § 5103(e) of the New York Insurance Law. Therefore, without purchasing additional coverage in the amount of $50,000, plaintiff is entitled to $250,000 in PIP benefits under the policy issued by Liberty Mutual.
To date, plaintiff has incurred medical expenses, work loss and other expenses totalling approximately $260,000. Plaintiff's bills may eventually exceed $300,000. While Liberty Mutual has paid plaintiff $250,000 in benefits, it refuses to accept liability for the $50,000 in supplemental benefits claimed by plaintiff, despite the fact that plaintiff paid an additional premium for such benefits. *95 Accordingly, plaintiff is seeking a declaration by this court that Liberty Mutual's total exposure under the insurance policy issued to plaintiff is $300,000.
Defendants raise various arguments in opposition to plaintiff's claim for supplemental benefits. The court will address each and every argument raised by defendants in support of the proposition that plaintiff should not receive the supplemental benefits that he is seeking.
First, Liberty Mutual argues that plaintiff's claim for supplemental benefits amounts to "stacking" which is prohibited by New Jersey case law. Next, National Union argues that N.J.S.A. 39:6A-4.2 compels the conclusion that PIP coverage afforded to plaintiff may not exceed $250,000 per person per accident. Finally, Lumbermans states that while it would appear that resolution of this issue depends upon an interpretation of the policy, it would seem patently unfair to require the PIP carrier to increase its base coverage from $50,000 to $250,000 and then tack on an additional $50,000 of exposure. For the reasons expressed below, the court finds that plaintiff is entitled to $50,000 in supplemental benefits to the extent that his reasonable medical expenses, work loss or other expenses exceed $250,000.
With respect to Liberty Mutual's argument that payment of $50,000 in supplemental benefits amounts to stacking under New Jersey law, the court disagrees. Liberty Mutual asserts that plaintiff's claim is barred by N.J.S.A. 39:6A-4.2 which states, in pertinent part, that "no person shall recover personal injury protection benefits under more than one automobile insurance policy for injuries sustained in any one accident."
In Martin v. Prudential Ins. Co., 255 N.J. Super. 524, 605 A.2d 762 (App.Div. 1992), the Appellate Division explained the legislative intent behind N.J.S.A. 39:6A-4.2. The court stated that "what the Legislature likely had in mind [in prohibiting stacking] was a situation involving two coincidentally primary PIP policies which it knew provided identical coverage. N.J.S.A. 39:6A-4.2 was enacted *96 to preclude redundant recovery in such circumstances. We think the statute means no more and no less." Id. at 529, 605 A.2d 762. In the present case, plaintiff is not trying to recover PIP benefits under more than one policy. Accordingly, a recovery by plaintiff of $50,000 in supplemental PIP benefits is not prohibited by the prohibition against stacking contained in N.J.S.A. 39:6A-4.2.
Second, the court finds that National Union's argument that N.J.S.A. 39:6A-4.2 compels the conclusion that plaintiff may not receive PIP benefits beyond $250,000 is without merit. N.J.S.A. 39:6A-4.2 states that personal injury protection coverage required to be provided means and includes "Medical Expense Benefits. Payment of reasonable medical expenses in an amount not to exceed $250,000 per person per accident." In determining the meaning to be given to such phrase, the court recognizes that the no fault law is social legislation designed to give the broadest protection to accident victims, including prompt payment of claims. New Jersey Mfrs. Ins. Co. v. Griffin, 253 N.J. Super. 173, 601 A.2d 261 (Law Div. 1991).
Consistent with the purpose of providing the broadest protection possible to accident victims, the court finds that N.J.S.A. 39:6A-4.2 sets a floor and not a ceiling to the amount of PIP benefits for which an insurer may be held responsible. Any other interpretation of N.J.S.A. 39:6A-4.2 would be unfair to policyholders who, like plaintiff, purchased supplemental insurance in exchange for premiums collected by insurance carriers.
Third, the court finds that Lumbermans' argument that it would be patently unfair to allow plaintiff to recover supplemental benefits is without merit. Initially, it must be recognized that it is undisputed that plaintiff is entitled to $250,000 in PIP coverage whether or not he purchased supplemental coverage. In addition, it should be noted that the policy issued to plaintiff by Liberty Mutual does not contain a provision limiting plaintiff's right to receive supplemental benefits under New Jersey or any other foreign state's laws that provides PIP benefits greater than those *97 provided under New York law. Thus, the question presented to the court is whether plaintiff should be deprived of the supplemental coverage that he purchased in the absence of a clear expression of a legislative intent or contractual right to do so.
Under the laws of New York and New Jersey, a court must ascertain the intent of the parties, including the expectations of the insured when interpreting insurance contracts. Smithbower v. Navistar Intern. Transp. Corp., 265 N.J. Super. 119, 625 A.2d 586 (App.Div. 1993); Anchor Armored Delivery Inc. v. Certain Under. of Lloyds of London, 146 Misc.2d 545, 551 N.Y.S.2d 449 (Sup.Ct. 1990), aff'd, 177 A.D.2d 611, 576 N.Y.S.2d 587 (App.Div. 1991). Applying this standard to the facts of this case, the court finds that plaintiff is entitled to $50,000 in supplemental PIP benefits for which Liberty Mutual collected a premium. If Liberty Mutual, a sophisticated insurer doing business in New York and New Jersey, wished to preclude plaintiff from obtaining PIP benefits supplemental to the $250,000 in mandatory PIP benefits recoverable in New Jersey, it should have clearly spelled out such intent in its policy. It did not. Under the laws of State of New York and the State of New Jersey, it would be patently unfair to deprive plaintiff, who was seriously injured in an automobile accident, of the opportunity to recover $50,000 in supplemental benefits for which Liberty Mutual collected a premium in the absence of a clear expression of an intent of the New York or New Jersey Legislature or contractual right of Liberty Mutual to do so. Accordingly, the court finds that Liberty Mutual's current exposure under the insurance policy issued to plaintiff is $50,000, representing the supplemental PIP benefits for which it collected a premium.
In accordance with the findings of fact and conclusions of law set forth above, Liberty Mutual cannot recover from the parties to this litigation the PIP benefits it paid to plaintiff. Furthermore, Liberty Mutual's total exposure for PIP benefits under the policy issued to plaintiff is $300,000. Counsel for plaintiff shall submit an order consistent with these findings.