704 A.2d 976

HARRY GRANT, PLAINTIFF–RESPONDENT, v. CLAUDE N. THOMAS, REGNIER'S REFRIGERATED EXPRESS, INC., ANTHONY S. CRISS, DEFENDANTS, AND AMEX ASSURANCE COMPANY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 9, 1997—Decided December 31, 1997.

Before Judges DREIER, KEEFE and PAUL G. LEVY.

*Addas & Potenza,* attorneys for appellant (*Frank P. Addas,* on the brief).

*Bendit Weinstock,* attorneys for respondent (*Alan Roth* and *Christine M. Tiritilli,* on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

Defendant, Amex Assurance Company, plaintiff's automobile insurer, appeals by leave granted from a non-final summary judgment declaring that the New Jersey "deemer" statute, *N.J.S.A.* 17:28–1.4, imposes Personal Injury Protection liability limits up to $250,000. Amex is an Illinois corporation with its principal offices located in Wisconsin. Plaintiff is a New York resident who was injured when he was involved in a New Jersey accident [1] while driving his New York registered vehicle which was insured by Amex under a policy written in New York. Plaintiff sought PIP coverage from defendant in excess of the $50,000 Amex policy limit, but Amex denied coverage over $50,000.

The New Jersey "deemer" statute reads:

Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy ... personal injury protection benefits coverage pursuant to section 4 of P.L.1972, c. 70 (C. 39:6A–4) [2] ..., whenever the automobile or motor vehicle insured under the policy is used or operated in this State.

--------

[1] On February 21, 1994, while the Amex policy was in effect plaintiff and other drivers, defendants Claude N. Thomas and Anthony S. Criss, were involved in an automobile accident on the New Jersey Turnpike. Plaintiff's injuries have resulted in medical expenses already in excess of $90,000.

[2] *N.J.S.A.* 39:6A–4 states that:

"Personal injury protection coverage" means and includes: (a) Medical expense benefits. Payment of reasonable medical expenses in an amount not to exceed $250,000 per person per accident. In the event benefits paid by an insurer pursuant to this subsection are in excess of $75,000 on account of personal injury to any one person in any one accident, such excess shall be paid by the insurer in consultation with the Unsatisfied Claim

[*N.J.S.A.* 17:28–1.4].

There are two issues in this case. The first is whether Amex's status justifies our application of the "deemer" statute. The second issue is whether the law applicable to the interpretation of the Amex policy, here construed to be New York law, separately adopts the New Jersey PIP liability limit.

## I.

Amex holds a Certificate of Authority issued pursuant to *N.J.S.A.* 17:17–10 to transact business in New Jersey. The Certificate issued April 2, 1993, provides:

This is to certify that the Amex Assurance Company of Chicago, Illinois, having complied with the laws of the State of New Jersey, and any supplements or amendments thereto with respect to the transaction of the business of insurance, *is authorized to transact* in this State until the first day of May, 1994, [*inter alia,* personal, commercial and physical automobile] lines of insurance.

[Emphasis added].

Defendant renewed the Certificate for the following year.[3] Although the Certificate of Authority had been issued by the State, defendant had not filed for approval of a rating system, as required by *N.J.S.A.* 17:29A–6. Amex contends that since it did not seek such approval, it is not authorized to transact insurance business in New Jersey.

We note that the "deemer" statute imposes liability on an insurer "authorized to transact" business in New Jersey, and also

---

and Judgment Fund Board and shall be reimbursable to the insurer from the Unsatisfied Claim and Judgment Fund pursuant to section 2 of P.L.1977, c. 310 (C. 39:6–73.1).

As defendant correctly points out in its brief, were its liability under *N.J.S.A.* 17:28–1.4 to exceed $75,000, as an out-of-state insurer, defendant would not be entitled to reimbursement from the UCJF. *See Martin v. Home Ins. Co.,* 141 *N.J.* 279, 289–90, 661 *A.*2d 808 (1995).

[3] Amex had previously been authorized to transact automobile insurance business in the State of New Jersey effective February 25, 1981. Amex submitted proof to the court, however, that it had withdrawn from writing personal and commercial automobile liability and physical damage insurance in New Jersey effective January 21, 1987.

upon an insurer "transacting automobile or motor vehicle insurance business in this State." Plaintiff and Amex have argued extensively as to whether the word "or" in the phrase "authorized to transact *or* transacting automobile or motor vehicle insurance business in this State" should be read respectively in the conjunctive or disjunctive. As the Supreme Court noted in *Howard v. Harwood's Restaurant Co.*, 25 *N.J.* 72, 88, 135 *A.*2d 161 (1957), "[t]he words 'or' and 'and' are ofttimes used interchangeably, and the determination of whether the word 'and' as used in a statute should be read in the conjunctive or disjunctive depends primarily upon the legislative intent." Furthermore, "[t]he word 'or' while normally used to indicate disjunctive clauses, has often been interpreted to mean the conjunctive if this is more consistent with legislative intent." *Wildwood Storage Center, Inc. v. Mayor & Council of Wildwood*, 260 *N.J.Super.* 464, 471, 616 *A.*2d 1331 (App.Div.1992); *see also Red Bank Regional Educ. Assoc. v. Red Bank Regional High Sch. Bd. of Educ.*, 151 *N.J.Super.* 435, 438, 376 *A.*2d 1325 (App.Div.1977), *aff'd*, 78 *N.J.* 122, 393 *A.*2d 267 (1978); *Murphy v. Zink*, 136 *N.J.L.* 235, 238, 54 *A.*2d 250 (Sup.Ct. 1947).

■ We can see no reason why the Legislature would require both the authorization to transact business and the actual transaction of business before the "deemer" statute would be applied. We therefore read the word "or" in the disjunctive, permitting liability to be imposed either if an insurer is authorized to transact insurance business, or, whether authorized or not, if the insurer actually transacts automobile or motor vehicle insurance business in New Jersey. It appears obvious to us that the Legislature would not absolve from responsibility an insurer who without receiving authorization from the State actually writes automobile insurance in New Jersey. Such an insurance company which disregards our State law certainly would not be placed in a better position than an insurer who had obtained the requisite authority.

■ The real issue in this case is not whether the word "or" should be understood in the conjunctive or disjunctive, but rather

is whether Amex was actually "authorized to transact ... automobile or motor vehicle insurance business in this State." Plaintiff contends that the Certificate of Authority constitutes such authorization; Amex asserts that it is not authorized to transact business until it has applied for, and obtained, approval of its rates. It appears clear to us that Amex is correct in this issue. *N.J.S.A.* 17:29A–6 requires the rating system to be filed, and *N.J.S.A.* 17:29A–7 provides for the approval of the rating system by the Commissioner. An insurer may not charge premiums except in accordance with the approved rating system. *N.J.S.A.* 17:29A–15. Similar provisions apply under the Automobile Insurance Reform Act of 1982, *N.J.S.A.* 17:29A–33 *et seq.*, where merit rating insurance surcharges are permitted.

Amex received a certificate to transact business, but did not complete the second required step before it could write policies in New Jersey, namely the approval of its rate structure. We therefore determine that it was not "authorized to transact ... automobile or motor vehicle insurance business in this State."[4]

## II.

This does not end our inquiry. Plaintiff's insurance policy had been issued in the State of New York to plaintiff, then a New York resident. The terms of the policy therefore, unless the insurer was subject to the "deemer" statute in New Jersey, would be governed by New York law. *See Rutgers Cas. Ins. Co. v. State*

---

[4] We note that case, text and other references to the "deemer" statute relate to the transacting of business, not to those authorized to transact business. *See, e.g., D'Orio v. West Jersey Health Systems,* 797 *F.Supp.* 371, 373 (D.N.J.1992); Cynthia M. Craig and Daniel J. Pomeroy, *New Jersey Auto Insurance Law,* § 3:2, at 31–32 (Gann 1997) ("The obligation [to include the coverage provisions required by the statute] exists even if the company itself does not transact business here directly as long as a subsidiary, parent or commonly owned sister corporation does so"); and the press release from the Governor's Office when the "deemer" statute was signed, stating that "insurance companies doing business in New Jersey will be required under the legislation to provide coverage to out-of-state motorists similar to that mandated by New Jersey if the out-of-state motorist is involved in an accident in New Jersey."

*Farm Mut. Ins. Co.*, 234 *N.J.Super.* 202, 207, 560 *A.2d* 722 (App.Div.1989). The New York insurance law provides:

> Every owner's policy of liability insurance ... shall also provide, when a motor vehicle covered by such policy is used or operated in any other state or in any Canadian province, insurance coverage for such motor vehicle at least in the minimum amount required by the laws of that state or province.
>
> · [N.Y. Insurance Law § 5103(e) (McKinney 1997).]

Although plaintiff's policy had a face amount of $50,000, New York requires that the policy coverage be extended to the minimum amount required by New Jersey when plaintiff's vehicle is being operated in New Jersey. *N.J.S.A.* 39:6A–4a requires that personal injury protection coverage include "[p]ayment of reasonable medical expenses in an amount not to exceed $250,000 per person per accident." There is a single New Jersey case treating this issue. *See Tyberg v. Kokinidis*, 283 *N.J.Super.* 84, 94, 660 *A.2d* 1301 (Law Div.1995), (where Judge Fitzpatrick determined that the New York policy's $50,000 basic no-fault coverage would be increased to $250,000 as required by § 5103(e) of the New York insurance law).

We agree with *Tyberg* that because New York law applies to the construction of this policy, and § 5103(e) of the New York insurance law incorporates our required minimum coverage for PIP liability in the amount of $250,000, Amex is responsible to plaintiff in that amount for his medical expenses arising out of the New Jersey accident. This decision is consistent with New York's own judicial interpretation of § 5103(e) and its predecessor statute, § 672. *See Dempsey v. Consumers Dist. Co., Ltd.*, 188 *A.D.2d* 509, 591 *N.Y.S.2d* 432, 433 (1992); *Country Wide Ins. Co. v. Rodriguez*, 80 *A.D.2d* 130, 437 *N.Y.S.2d* 674, 677–78 (1981), *aff'd*, 55 *N.Y.2d* 162, 448 *N.Y.S.2d* 135, 433 *N.E.2d* 118, *cert. denied*, 457 *U.S.* 1118, 102 *S.Ct.* 2930, 73 *L.Ed.2d* 1330 (1982).

Although the trial judge in this case reached the same net conclusion through a mistaken application of the "deemer" statute based on Amex's possession of a Certificate of Authority to conduct business, appeals are taken from judgments or orders, and not the reasons therefor. *R.* 2:2–3; *Mills v. J. Daunoras*

*Constr., Inc.,* 278 *N.J.Super.* 373, 378–79, 651 *A.*2d 114 (App.Div. 1995).

We therefore affirm the order determining that Amex is responsible for PIP coverage up to $250,000 for the accident in question, but for the reasons we have stated herein. This matter is remanded to the Law Division for further proceedings.